**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JAMES M. FRANCIS,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | **CIVIL ACTION NO.** |
| **v.** | : | |
| | : | **2:16-cv-04376-JHS** |
| **JOHANNA ML FRANCIS,** | : | |
| | : | |
| **Defendant.** | : | |

**PLAINTIFF'S PRETRIAL MEMORANDUM**

Plaintiff, James M. Francis, by his counsel, respectfully submits this pretrial memorandum pursuant to paragraph 6 of the Court's Seventh Amended Scheduling Order and Rule 16.1(c) of the Local Rules of Civil Procedure.

**1.      Factual Summary of Plaintiff's Contentions**

Plaintiff instituted this action, in his own right and as the assignee of Francis Family Investments LLC ("Francis Family") to resolve long standing business disputes between Defendant (his daughter) and himself regarding various family business interests. In Counts I and II,[1] Plaintiff seeks a distribution of assets/damages resulting from Defendant's breach of the parties' Partnering Agreement in regards to the property located at 232 S. 3rd Street ("232 S 3rd"). Pursuant to the Partnering Agreement, Plaintiff held a 50% interest and Defendant a 50% interest in that property, together

---

[1] Although relying on the averments made in Count I of the Complaint, Plaintiff will not be pursuing a claim of quiet title at trial.

with a 50%-50% interest in certain vehicles. Counts III and IV[2] arise out of Defendant's waste and mismanagement relating to her control of two properties in Brooklyn, NY (61 Greene Avenue and 301 Washington Avenue, collectively the "Brooklyn Properties"), which mismanagement includes her unauthorized transfer of the interests in the entities that owned the Brooklyn Properties. Count V arises out of Defendant's waste and mismanagement as the General Partner of entities that owned additional Philadelphia properties (collectively, the "Philadelphia Properties") for the benefit of Plaintiff through Francis Family: 115-117 North Third Street ("115-117 N 3rd"), owned by Olde North Third, LP ("ONT") and 207-209 Monroe Street ("207-209 Monroe") and 718-724 South Second Street (718-724 S 2nd), owned respectively by Queens Mews South, LP ("QMS") and Queens Mews West, LP ("QMW"). In her role as General Partner, Defendant engaged in waste, mismanagement and self-dealing causing each of these entities to default on loans made to them by TD Bank, N.A. The QMS and QMW properties were sold at Sheriff's sale; while Mr. Francis intervened and negotiated a forbearance agreement for ONT, the property was ultimately foreclosed upon as well. In both instances, however, Plaintiff (and his assignees) sustained substantial losses caused by Defendant's conduct.

Defendant's counterclaims contest Mr. Francis's controlling interest in Francis Family, claim that Mr. Francis's actions to mitigate the loss attributable to Defendant's mismanagement were unauthorized and constituted tortious interference with Defendant's business relations, and further characterize said actions to mitigate such loss as waste and mismanagement, unjust enrichment, interference with business relations, and conversion. Contrary to these allegations, Mr. Francis acted within his authority and to the benefit of the properties to mitigate the loss attributable to Defendant's conduct.

---

[2] Although relying on the averments made in Count III of the Complaint, Plaintiff will not be pursuing a claim of fraudulent transfer at trial.

**2.      Plaintiff's Witnesses and Nature of Expected Testimony**

    **a.      James M. Francis**

Mr. Francis will be the principal witness for Plaintiff and will testify as to all of Plaintiff's claims. Specifically, Mr. Francis is expected to testify regarding the following:

    **i.      Count II**
       **Breach of the Partnering Agreement**

       1.      The 2003 Partnering Agreement and Contribution Agreement entered into by Mr. Francis and Defendant regarding Philadelphia properties which Mr. Francis and Defendant intended to develop.

       2.      The circumstances regarding the purchase and financing of 232 S. 3rd in Philadelphia, owned and financed by Defendant but purchased with a down payment from Mr. Francis, and subject to the Partnering and Contribution Agreements.

       3.      Mr. Francis's attempts to develop 232 S 3rd through the design and build companies that he owns and manages (Phoenix Design and Development, *inter alia*).

       4.      The decline of 232 S. 3rd due to Defendant's mismanagement, resulting in a conservatorship action against the property, multiple judgments, and delinquent city taxes.

    **ii.      Count III**
       **Waste and Mismanagement (Brooklyn Properties)**

       1.      Mr. Francis's original ownership of the Brooklyn Properties, both personally and through entities wholly owned by him, and their subsequent contribution to an entity called Etienne Estates LCC, a New York limited liability company ("EE NY")

       2.      Defendant's purchase of 90% interest in EE NY in exchange for a $810,000 promissory note to FF Investments LLC ("FF"), an entity owned by Mr. Francis.

3.     Defendant's failure to make payments on the note, leading to her transferring a 41% interest in EE NY back to FF for a reduction of her principal owed. FF then transferred a 51% interest in EE NY to Francis Family as a capital contribution.

4.     The origination and organization of Francis Family, its purpose, operating agreement, membership, membership terms, membership interests, capital contributions, capital accounts, and circumstances of its initial management by Defendant.

5.     The financing of the Brooklyn Properties for development and the funds available through financing for continued management by Defendant.

6.     Defendant's failure as manager of Francis Family to conform with the Francis Family operating agreement where, unbeknownst to Mr. Francis, she transferred without authority 41% of Francis Family's interest in EE NY to herself.

7.     The division and transfer of the Brooklyn Properties to respective entities: 61 Greene Avenue to Etienne Estates on Greene ("EE on G") and 301 Washington Avenue to Etienne Estates at Washington ("EE at W").

8.     The changing nature of Mr. Francis's business relationship with Defendant.

9.     Mr. Francis's discovery that, notwithstanding sufficient financing and capital contributions to assure the satisfaction of EE on G's obligations, 61 Greene Avenue was in foreclosure.

10.    Mr. Francis's actions to mitigate the loss due to Defendant's mismanagement of the Brooklyn Properties, including removing her as manager of Francis Family, FF, EE on G, and EE at W.

11.    Mr. Francis's discovery that Defendant had failed as manager to credit his Francis Family capital account for his capitol contributions in regard to the Brooklyn Properties.

12. Mr. Francis's discovery that Defendant had mismanaged Francis Family's interest in the Brooklyn Properties, transferring a significant portion of said interest to herself and significantly reducing the assets of Francis Family.

13. Mr. Francis's investigation of cash flow for EE on G and EE at W and the lack of accountability for the refinance proceeds and capital contributions during Defendant's management of those entities, which management resulted in foreclosure action and bankruptcy action.

14. Mr. Francis's understanding of the value of the Brooklyn Properties as developed, which value (roughly $7,073,000.00), less costs, represents a loss to Mr. Francis through Francis Family as a result of Defendant's mismanagement, as well as the rental value of the Brooklyn properties (roughly $40,000/mo), which represents an ongoing loss to Mr. Francis through Francis Family.

### iii. Count V
### Waste and Mismanagement (Philadelphia Properties)

#### 1. As to Old North Third

a. The origination and organization of FFamily Investment ONT LLC, subsequently re-named FFamily Investments LP LLC ("FFamily"), owned by Francis Family.

b. The origination and organization of Old North Third LP ("ONT"), its purpose, ownership, operating agreement, partners, partnership terms, partnership interests, capital contributions, capital accounts, and initial management by general partnership entities owned by Defendant.

c. Purchase and financing of 115-117 N 3rd by ONT and subsequent refinancing for development.

d. ONT's agreement with Mr. Francis's development company, Phoenix Groups Design-Build LLC ("Phoenix"), to develop the property.

e.  Terms of the TD Bank construction loan regarding use of funds for development.

f.  Defendant's failure to consistently process requisitions from Phoenix to make funds from TD Bank available for continued development.

g.  Defendant's failure to pay the interest on the TD Bank loan, notwithstanding sufficient funds and an interest reserve provided for in the terms of the loan, resulting in a default.

h.  Mr. Francis's actions to mitigate the loss due to Defendant's mismanagement of ONT, including removing her entity as general partner.

i.  Mr. Francis's efforts to save ONT from foreclosure, including re-opening a confessed judgment against both ONT and Defendant as guarantor, and negotiating a forbearance agreement.

j.  Mr. Francis's efforts to comply with the forbearance agreement, including the filing of tax records where Defendant had failed to do so, leading to his discovery that $124,087.00 in funds had been diverted by Defendant from the TD Bank loan — which construction loan was governed by an agreement strictly regulating the use of funds — to Defendant's entity.

k.  The appraised value of the ONT property as developed ($7,912,275.00) which value, less costs, represents loss to Mr. Francis through FFamily and Francis Family as a result of Defendant's waste and mismanagement.

**2.  As to Queens Mews South and Queens Mews West**

a.  The purchase of 207-209 Monroe Street and 718-724 S 2nd Street by either Defendant (with Mr. Francis contributing the down payment) or Mr. Francis through his entity Felix Court, and the financing for said purchases.

b.  The origination and organization of Queens Mews South LP("QMS") and Queen Mews West LP("QMW") (Collectively "QM"), their purpose, ownership, operating agreements, partners, partnership terms, partnership interests, capital contributions, capital accounts, and initial management by general partnership entities owned by Defendant.

c.  The contributions of 207-209 Monroe Street and 718-724 S 2nd Street to QMS and QMW respectively, and the financing for their development by TD Bank.

d.  Phoenix's plans for the development of the QM properties, and its inability to carry through with development due to Defendant's waste and mismanagement.

e.  Defendant's default on the TD Bank loan, despite sufficient funds and a reserve for interest payments provided for in the terms of the loan.

f.  Mr. Francis's actions to mitigate the loss due to Defendant's mismanagement of QM, including removing her entity as general partner from QMS and QMW.

g.  Mr. Francis's efforts to save QM from foreclosure, which was ultimately unsuccessful despite his efforts. The QM properties were sold at sheriff sale.

h.  The appraised value of the QM properties as developed ($7,856,000.00) which value, less costs, represents loss to Mr. Francis through FFamily and Francis Family as a result of Defendant's waste and mismanagement.

i.  Mr. Francis's discovery that Defendant had failed as manager of Francis Family to credit his Francis family capital account for his capital contributions in regard to QM, leading to additional losses in regard to the value of his Francis Family capital account.

iv.     **Counterclaims**

1.     **Counterclaim Count I, Declaratory Judgment & Count IV, Tortious Interference**

a.     The original members of Francis Family were Defendant and FF, wholly owned by Mr. Francis, with FF having a controlling interest. Subsequent members of the Francis family were listed in an attached schedule as additional members with an assigned interest. However, the Francis Family Operating Agreement ("Agreement") provided that no member could be admitted as an additional member without the execution of an admission agreement and the payment of a capital contribution. No additional member satisfied this requirement.

b.     Moreover the Agreement indicates that no member shall be entitled to exercise any voting rights until they pay the required capital contribution. No member besides Mr. Francis did so. Defendant made no capital contribution to Francis Family. Mr. Francis made capital contributions to all the entities at issue, for the benefit of Francis Family, during their purchase, development, and to save them from Defendant's waste and mismanagement. Consequentially Mr. Francis has always been the only member to exercise voting authority on behalf of Francis Family.

c.     Through his authority over Francis Family, Mr. Francis's actions to mitigate the losses to Francis Family resulting from Defendant's waste and mismanagement were in accordance with the Agreement as well as the operating agreements and limited partnership agreements governing the entities over which Francis Family had a controlling interest.

d.     As such, his removal of defendant as manager of the pertinent entities, and his management of same, is appropriate, in accordance with the governing agreements, and done in the best interest of Francis Family and the entities it owns.

e.      Said removal did not interfere with a business relationship as Defendant did not have business relationships with the entities in question — rather her roles as manager or general partner were governed by the pertinent agreements which provided for her removal under the circumstances in question.

**2.      Counterclaim Count II, Waste and Mismanagement, Count III, Unjust Enrichment, Count V, Conversion**

a.      The origination and organization of TrisVanDivi Court LP ("TVD"), its purpose, ownership, operating agreements, partners, partnership terms, partnership interests, capital contributions, capital accounts, and initial management by general partnership entities owned by Defendant.

b.      Purchase of 312 Monroe Street by TVD and financing by Independent Mortgage Company ("IMC").

c.      Phoenix's plan to develop TVD.

d.      Defendant's failure to manage payments to Phoenix and to IMC, leading to a confession of judgment by IMC.

e.      The plan to avoid a judgment and loss of the property in foreclosure by merging TVD with a new entity, Three 12 LP, and having another entity, Pemberton Asset LLC, purchase the mortgage from IMC.

f.      The breakdown of the plan to merge TVD with Three 12 LP due to a title problem with 312 Monroe Street attributable to the title company.

g.      Phoenix plans to continue the development of 312 Monroe Street

h.      The subsequent plan to convey a deed in lieu of foreclosure from TVD to a new unrelated purchaser, 312 Monroe Partners, and the satisfaction of the judgment lien against Defendant.

     i.        The resulting extinguishment of Defendant's profit and loss interest in TVD.

     j.        Financing and development of the property by 312 Monroe Partners, and its eventual sale.

     k.        Mr. Francis did not profit from the transaction, his entities were reimbursed for capital contributions or for work performed, his efforts reduced Defendant's debt, and in any event in accordance with the governing agreements and as a result of the confession of judgment, merger, and deed in lieu, Defendant is owed nothing from this transaction.

     l.        Similarly, Mr. Francis has not profited from the forbearance agreement and resulting TD Bank loan for 115-117 N. 3rd Street. His efforts reduced Defendant's debt, and in any event in accordance with the governing agreements and as a result of the confession of judgment, and forbearance agreement, Defendant is owed nothing from this transaction.

**b.**     **Jerry Lutnick, CPA**

     i.        Accounting of capital contributions made by Mr. Francis to various entities that should have been attributed to his Francis Family capital account.

     ii.       Preparation of taxes for various entities and for Defendant.

     iii.    The nature of the transactions to save 312 Monroe from foreclosure and his investment in same.

**c.**     **Kendall V. Jones,  TD Bank**

     i.        The nature of TD Bank's construction loans to the entities developing the Philadelphia Properties, the terms and conditions of same.

     ii.       The circumstances of the defaults of ONT and QM.

**d.**     **Gwynn Glasgow**

      i.      Ms. Glasgow is a bookkeeper who worked with Mr. Francis from approximately 2012 to the present.

      ii.     The preparation of certain financial reports in accordance with TD Bank's requirements following the forbearance agreement for ONT, and the discovery therein of $124,087.00 in funds which been diverted to an entity controlled by Defendant.

## 3.   Monetary Damages and Other Relief

Mr. Francis has sought an accounting as a remedy, as a specific determination of the extent of defendant's waste and mismanagement is otherwise impossible due to her failure to provide regular reports to Mr. Francis in accordance with the pertinent agreements. Moreover, Mr. Francis seeks as a remedy specific performance of the Partnering Agreement as to the property 232 S 3rd Street. Additionally, Mr. Francis lists the following items of monetary damages and economic loss claimed:

      a.     Loss of realized value of Brooklyn Properties as-developed due to defendant's waste and mismanagement.

      b.     Loss of rental income of the Brooklyn Properties as-developed due to the defendant's waste and mismanagement.

      c.     Loss of percentage interest ownership in Brooklyn Properties through Francis Family due to defendant's waste and mismanagement.

      d.     Loss of value to Mr. Francis's Francis Family capital account due to defendant's failure to credit his capital contributions through waste and mismanagement.

      e.     Loss of realized value of QM Properties as-developed due to defendant's waste and mismanagement.

      f.     Loss of realized value of ONT Properties as-developed due to defendant's waste and mismanagement.

**4.     Stipulations**

Mr. Francis would be amenable to stipulating to certain facts such as the ownership, formation, and succession of various relevant business entities, the acquisition and ownership of relevant properties, and the admissibility and authenticity of agreements and documents relating to same. The parties are engaged in ongoing and productive discussions regarding stipulations.

Mr. Francis respectfully reserves the right to amend his complaint and/or his answer to defendant's putative counterclaims if and as necessary to conform to the evidence and legal theories established at trial.

Respectfully submitted,

/s/ Alexandre N. Turner
Alexandre N. Turner
alex@turnerlawofficesllc.com
1500 Walnut Street, 21st Floor
Philadelphia, Pennsylvania 19102
Telephone: (267) 225-6628
Facsimile: (267) 535-5682

Dated: January 27, 2020

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 27, 2020, I caused a copy of plaintiff's foregoing

pretrial memorandum to be served via email upon:

>
> Dimitri Karapelou, Esquire
> Two Penn Center
> 1500 JFK Boulevard, Suite 920
> Philadelphia, PA 19102
> dkarapelou@karapeloulaw.com

>
> /s/ Alexandre N. Turner
> Alexandre N. Turner
> alex@turnerlawofficesllc.com
> Land Title Building
> 100 South Broad Street, Suite 715
> Philadelphia, Pennsylvania 19110
> Telephone:  (267) 225-6628
> Facsimile:  (267) 535-5682