IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JAMES M. FRANCIS,<br><br>                Plaintiff,<br><br>v.<br><br>JOHANNA ML FRANCIS,<br><br>                Defendant. | CIVIL ACTION<br>NO. 16-4376 |

**OPINION AND ORDER**

**Slomsky, J.**                                                                                                                         **April 18, 2023**

      Plaintiff James Francis has filed a Motion he titles: "First Amendment of [the] Complaint to Conform to the Evidence." (Doc. No. 213.) For reasons that follow, Plaintiff's Motion (Doc. No. 213) will be denied.

**I.    INTRODUCTION**

      In his Motion, Plaintiff James Francis seeks to file what he titles a First Amended Complaint to Conform to the Evidence. While the Motion and the proposed First Amended Complaint are inartfully drafted by James Francis, who is proceeding pro se, the Court will consider his new allegations in deciding the Motion. In this regard, the allegations made by James Francis in his Motion to First Amendment of [the] Complaint to Conform to the Evidence must be considered in conjunction with the Court's Findings of Fact and Conclusions of Law (Doc. No. 229), dated this day, following a ten (10) day non-jury trial held in 2020 and 2021, the claims made by Plaintiff James Francis in his Complaint, and the counterclaims made by Defendant Johanna Francis in her Answer. And as set forth in the Court's Findings of Facts and Conclusions of Law, the Court will refer to the parties by their first names, since they have the same last name. In

1

addition, while James was represented by counsel through seven (7) days of trial, he has represented himself since that time.

James wishes to add two (2) new claims and other allegations to the original Complaint. (Doc. No. 213 at 2-25.) The first claim, set forth in a new Count VI, relates to a default on the payment of a note executed in 2002. (Id. at 23.) The second claim, set forth in a new Count VII, relates to a transfer of an ownership interest that occurred in 2004. (Id. at 24.) He also seeks to reallege his original claims in Count IV, which was withdrawn in 2020 (see Doc. No. 136 at 2 n.2), and to amend four (4) claims, previously pled in Counts I, II, III, and V, which were before the Court for a decision following the ten (10) day non-jury trial. Plaintiff filed his Motion to First Amendment of [the] Complaint to Conform to the Evidence on June 7, 2022, nearly eight (8) months after the bench trial concluded on October 13, 2021. (Doc. No. 182.)

## II.   STANDARD UNDER RULE 15(b) of the FEDERAL RULES of CIVIL PROCEDURE

Federal Rule of Civil Procedure 15 governs amended and supplemental pleadings, which includes Complaints. Fed. R. Civ. P. 15. Rule 15(a) controls amendments sought before trial. Id. (a)(1)-(3). Rule 15(b), by contrast, controls amendments sought during and after trial. Id. (b)(1)-(2). As stated above, the Court presided over a non-jury trial in this case, which concluded in October 2021. The present Motion was filed in June 2022. Accordingly, James's proposed amendments fall under Rule 15(b), for they were sought after trial.

Rule 15(b) provides in pertinent part:

> (b) Amendments During and After Trial.
>
>> (1) Based on an Objection at Trial. If, at trial, a party objects that evidence is not within the issues raised in the pleadings, the court may permit the pleadings to be amended. The court should freely permit an amendment when doing so will aid in presenting the merits and the objecting party fails to satisfy the court that the

> evidence would prejudice that party's action or defense on the merits.  The court may grant a continuance to enable the objecting party to meet the evidence.
>
> (2) For Issues Tried by Consent.  When an issue not raised by the pleadings is tried by the parties' express or implied consent, it must be treated in all respects as if raised in the pleadings.  A party may move--at any time, even after judgment--to amend the pleadings to conform them to the evidence and to raise an unpleaded issue.  But failure to amend does not affect the result of the trial of that issue.

Id.  James titles his Motion:  "Motion to First Amendment of [the] Complaint to Conform to the Evidence," thereby invoking subsection (b)(2).  Subsection (b)(2) focuses on issues tried by the parties' consent, whether express or implied.  Here, the parties did not expressly consent to trial of issues not raised in the pleadings.  And even if there was express and/or implied consent to the trial of issues raised in his request to amend the Complaint to conform to the trial evidence, his Motion still will be denied for the reasons discussed below.

Generally, Rule 15 liberally favors amendments, a principle the Third Circuit has acknowledged.  See Wilson v. Quest Diagnostics Inc., Civ. No. 18-11960 (WJM), 2020 WL 401814, at *2 (E.D. Pa. Jan. 24, 2020) ("The Third Circuit has 'made clear that there is to be a liberal use of Rule 15 to amend complaints . . . .'") (citations omitted).  However, in Foman v. Davis, the United States Supreme Court noted that a court has the discretion to deny a proposed amendment if certain factors are met.  371 U.S. 178, 182 (1962).  Those factors, now aptly referred to as the Foman factors, are: (1) "substantial or undue prejudice to the nonmoving party;" (2) "bad faith or dilatory motives;" (3) "truly undue or unexplained delay;" (4) repeated failures to cure the deficiency by amendments previously allowed;" and (5) "futility of amendment."  USX Corp. v. Barnhart, 395 F.3d 161, 166 (3d Cir. 2004) (quoting Lorenz v. CSX Corp., 1 F.3d 1406, 1413-14 (3d Cir. 1993) (citing Foman, 371 U.S. at 182).  While each of these factors may be considered,

3

the first factor, prejudice, is "the touchstone for the denial of an amendment." USX Corp., 395 F.3d at 166.

Further, the Third Circuit has noted that the Foman factors, while critical to analyzing proposed amendments, are "not exhaustive, allowing a court to ground its decision, within reason, on consideration of additional equities, such as judicial economy/burden on the court . . . ." Mullin v. Balicki, 875 F.3d 140, 149-50 (3d Cir. 2017) (citation omitted). Judicial economy is often reviewed in conjunction with the factors of prejudice and undue delay, and includes "considerations [of] . . . judicial efficiency and effective case management." Id. at 157 (citations omitted).

Here, the Motion will be denied on grounds of "substantial or undue prejudice," "truly undue or unexplained delay," and "futility of amendment." Therefore, a brief description of each factor is warranted.

First, in evaluating prejudice, the court reviews "whether the amendment would: (1) require the non-moving party to expend significant additional resources to conduct discovery and prepare for trial; (2) significantly delay the resolution of the dispute; or (3) prevent the non-moving party from bringing a timely action in another forum." Wilson, 2020 WL 401814, at *3 (citing Long v. Wilson, 393 F.3d 390, 400 (3d Cir. 2004)). Second, mere delay is "an insufficient ground to deny an amendment." Id. at *4. The delay, therefore, must be undue. Id. (citations omitted). "Undue" is defined as "a delay that is protracted and unjustified[, which] can place a burden on the court or counterparty, or can indicate a lack of diligence sufficient to justify a discretionary denial of leave." Mullin, 875 F.3d at 151; see also Bjorgung v. Whitetail Resort, LP, 550 F.3d 263, 266 (3d Cir. 2008) ("Delay becomes 'undue,' and thereby creates grounds for the district court to refuse leave, when it places an unwarranted burden on the court or when the plaintiff has had previous

4

opportunities to amend.") (citation omitted).  Third, futility implies that "the complaint, as amended, would fail to state a claim upon which relief could be granted." Rogers v. Comcast Corp., 55 F. Supp. 3d 711, 716 (E.D. Pa. 2014) (citation omitted).

## III. ANALYSIS

Each Count, and the proposed amendments to each Count, will now be addressed in turn.

### 1. Count I: Equitable Relief: Quiet Title to 232 S. 3rd Street

James proposes four substantive changes to Count I, in which he seeks to quiet title to a property located at 232 S. 3rd Street, Philadelphia, Pennsylvania.  First, James removes eleven paragraphs in Count I, thereby eliminating most of his factual allegations.  (See Doc. No. 213 at 2-5.)  Second, he seeks to add the following: "Defendant fraudulently obtained title to property. Plaintiff had no intention of sharing any increase in value.  The transaction void [sic] should be voided."  (Id. at 5.)  Third, he modifies his WHEREFORE clause to allege that Johanna embezzled funds and failed to properly distribute profits.  (Id. at 5-6.)  Fourth, he alters his WHEREFORE clause to seek the following forms of relief: (1) "an auctioning off of the property" and "a determination of Net Profit pursuant to paragraph 2.1 of the Partnering Agreement"; (2) "an accounting . . . to determine (i) mortgage, real estate taxes, and governmental fees in arrears, and (ii) all of [J]ohanna's personal liabilities, liens, and judgements [sic];" and (3) "[t]hat (i) and (ii) shall be paid from Defendant's share of Net Profit."  (Id. at 6.)

These proposed amendments would be futile in this case.  First, the proposed allegations of Johanna "fraudulently obtain[ing] title" and having "no intention of sharing any increase in value," are almost identical to James's allegations in the original Complaint upon which the case was tried.  In the Complaint, James stated that Johanna "has wrongfully and improperly held herself out to be the legal owner of that property" and "caused herself to be the title owner of 232

5

S. 3rd St." (Doc. No. 2-2, Ex. A ¶¶ 12-13.) Further, James directly addressed the parties' intention to share profits and value and alleged that Johanna "failed and refused to share in any economic benefit generated from 232 S. 3rd St . . . ." (Id. ¶¶ 5-6, 9-10, 16, 18.) The Court considered these allegations and facts during the non-jury trial and the Court has now found that James has failed to prove his claims by a preponderance of the evidence. (See Doc. No. 229.) Consequently, James's proposed amendments fail to state a claim upon which relief could be granted. Simply put, there is no need here for the Complaint to conform to the evidence.

Second, the only other modifications that James makes to Count I pertain to his requests for relief, rather than the facts. Before a plaintiff may obtain relief, he or she must succeed in proving their factual allegations. But, here, James's proposed amendments to the WHEREFORE clause are futile because they would not change the outcome of the non-jury trial in which the Court found that James failed to prove by a preponderance of the evidence his claim in Count I. (See id.)

      2.      Count II: Breach of Partnering Agreement

James makes minor changes to Count II. He again removes certain portions of his allegations in Count II. (See Doc. No. 213 at 7-8.) In his first allegation, he merely amends it to assert that not only has Johanna engaged in "misconduct," but also in "fraudulent actions." (Id. at 7.) The only substantive modifications that James makes to Count II are alterations to the WHEREFORE clause. First, he states that Johanna embezzled funds and that profits were not distributed to him. (Id. at 8.) He then changes his requested relief to read:

    (a) The voiding of the Partnering Agreement and sale by auction ('Sale') of all assets[;]

    (b) Plaintiff to receive (i) his initial investment in 232 S. 3rd Street of $133,538 (having been determined by closing statement), (ii) for 232 S. 3rd Street, and 179 Duane Street; 50% of net profit ("Net Profit") as defined in the Partnering

6

>     Agreement. All personal judgements [sic], and liabilities of record, all mortgage, real estate taxes, and governmental fees in arrears, all personal liabilities, liens and judgements [sic] shall be paid from Defendant's share of Net Profit[; and]
>
> (c) The value of automobiles be determined by Kelly Blue book for years (i) 2010 and (ii) 2020. The automobiles shall be auctioned [and] Plaintiff shall receive 100% of the delta of value between 2010 and 2022, this to compensate Plaintiff for loss of use of automobiles.

(Id. at 8-9.)

Here, James's proposed amendments would again be futile. First, James does not assert any new factual allegations in support of his claim. The Court has considered the facts presented in support of his claim in Count II during trial and has found that James has failed to prove by a preponderance of the evidence a Breach of the Partnering Agreement. (See Doc. No. 229.) The proposed amendments in the WHEREFORE clause would not convert the claim into a successful one. As stated above, for a plaintiff to receive his or her requested relief, he or she must prevail in establishing the alleged claim. In addition, in the requested relief, James introduces a property located at 179 Duane Street in Philadelphia and automobiles as falling under the Partnering Agreement. Neither the property nor the automobiles are involved in the underlying disputes in this case and no facts are alleged that would state a claim for relief as to them.[1] Accordingly, James's proposed amendments to Count II would be futile. Moreover, while the non-jury trial briefly touched on 179 Duane Street and did not address the automobiles, it would be prejudicial to Johanna to allow their ownership to be litigated after the ten-day non-jury trial. Johanna would

---

[1] James references the automobiles in Count II of his original Complaint. (Doc. No. 2-2, Ex. A ¶ 22.) There, he alleges that Johanna did not provide financial documents in relation to the automobiles. However, during the non-jury trial, James did not address the automobiles. James also briefly mentions 179 Duane Street and the automobiles in Count I of his original Complaint. (Id. ¶¶ 7, 8(b).) These references merely identify what the Partnering Agreement considered. (Id.)

have to expend significant resources to conduct discovery on these matters and prepare for trial. Furthermore, resolution of this case would be unduly delayed.

      3.      <u>Count III: Waste and Mismanagement – New York Properties</u>

James proposes several amendments to Count III, covering the New York Properties of 301 Washington Avenue, Brooklyn, New York and 61 Greene Avenue, Brooklyn, New York. They are as follows:

1. Defendant transferred its [sic] 49% interest into Etienne Estates LLC a Delaware LLC ("Etienne Del"), wholly owned and controlled by Defendant.

2. [The transfer of Francis Family Investments' 41% interest in Etienne Estates NY to Etienne Estates Delaware was done with] [n]o consideration having been paid to Francis Family Investments LLC for its 41%. No payment of interest or principal was made – has been made on [the] Promissory Note – since 2002 when it was executed.

3. [Johanna failed to provide copies of financial statements, tax returns, and other financial information] prior to September 15, 2008 [and] failed and refused upon request to permit Plaintiff or his assignor to physically inspect the financial records. [Further, James wasn't given the relevant financial documents that pertained to] any company Johanna was manager or general partner of, including but not limited to Etienne Estates LLC (New York), Etienne Greene, and Etienne Washington.

4. The property [sic] were refinanced a number of times from 2002 to 2006 for the total amount of $1,340,110. Plaintiff never received a distribution of refinance proceeds, nor net income from the properties. In not providing Plaintiff with his distributions of net income [Defendant] has embezzled funds.

5. Defendant has never made a payment of principle [sic] nor of interest on the Note.

6. WHEREFORE, Plaintiff understanding that the funds Defendant embezzled has [sic] not been recovered, and there are profits from years of operations that were never dispersed to Plaintiff, seeks: [1] [a] ruling that Defendant is not entitled to a share of the refinancing proceeds, having not provided equity; [2] an accounting and judgement [sic] against [D]efendant for currently existing (i) mortgage, real estate taxes, and governmental fees in arrears, and (ii) all of Defendant's personal liabilities, liens, and judgements [sic] of record against property; and [3] [a] judgment against Defendant Johanna ML Francis for $1,340,000, representing all net refinancing proceeds.

(Doc. No. 213 at 11-12, 14-16.)

Each of the six proposed amendments would either be futile, substantially prejudice Johanna, or be the result of James's truly undue and unexplained delay. The first and third amendments would be futile, and therefore will be addressed together. As to the first proposed amendment regarding Johanna's transfer of her 49% interest, James addressed this point in his 2016 Complaint. There, he stated: "Defendant contributed her 49% interest in Etienne Estates (NY) to Etienne Estates LLC (Delaware)" and "Etienne Estates LLC (Delaware), wholly owned and controlled by Defendant . . . ." (Doc. No. 2-2, Ex. A ¶¶ 30-31.) Therefore, this proposed amendment does not add anything new to James's initial allegations, which were the subject of testimony at the non-jury trial, and would not change the outcome of the non-jury trial on Count II. The third proposed amendment regarding James's inability to access financial documents also would be futile and not change the outcome against him of the non-jury trial on Count III. The Court considered this allegation fully during the non-jury trial and the mere addition to the third proposed amendment of the September 15, 2008 date does not change the claim. Furthermore, alleging that Johanna "failed and refused upon request to permit Plaintiff or his assignor to physically inspect the financial records" effectively falls under the allegation that he was not provided with copies of relevant financial documents, and again does not convert the claim into a successful one, especially when the Court considered all facts proposed during trial relating to James's alleged lack of access to financial records. And expanding the companies to include those that "Johanna was manager or general partner of" still does not state a claim upon which relief could be granted. At trial, evidence was presented through testimony and documents on the properties "Johanna was general partner" of and James even asserted in Count V of his original Complaint that Johanna failed to provide financial records for the Philadelphia Properties. Thus, the Court heard and considered these facts as they were presented during trial and has now found

that James has failed to prove his Count II claim by a preponderance of the evidence. (See Doc. No. 229.) Thus, there is no need to conform the Complaint to trial evidence.

Moreover, as to the second, fourth, and fifth amendments, allowing these amendments following the non-jury trial would prejudice Johanna. Furthermore, James's delay in asserting them is truly undue and unexplained. Regarding the second proposed amendment, the Court presided over a lengthy non-jury trial, in which it considered all facts, including James's testimony about the promissory note and Johanna's alleged unlawful transfer of interests, actions which occurred in 2002 and 2004, and of which James was aware at least by 2010, per his testimony. (Doc. No. 147 at 110:16-22; 128:14-18; Doc. No. 148 at 16:7-9; 25:6-15; Doc. No. 149 at 30:6-9; 80:23-25; 81:1-13; Doc. No. 150 at 94:25; 95:1-4.) Further, James addressed the promissory note in his 2016 Complaint and attached a copy of it to his Complaint. (See Doc. No. 2-2, Ex. 2.) As to the fourth proposed amendment, James presents a conclusory new allegation: embezzlement. But the Court has considered the trial evidence on this matter and resolved it against him. Lastly, the fifth proposed amendment, that "Defendant has never made a payment of principle [sic] nor of interest on the Note," presents a new claim, one in which James also asserts in his first new claim in Count VI. But, in asserting all these allegations, James relies on events which occurred as early as 2002. (See, e.g., Doc. No. 147 at 76:5-12; 78:11-16, 21-23; 81:24-25; 82:1-2.) Accordingly, James knew of these events well before filing the 2016 Complaint. He does not explain his failure to assert these facts in the original Complaint. To permit such amendments, therefore, would substantially and unduly prejudice Johanna by requiring her to defend against new claims fourteen years after the alleged events, and seven years after the original Complaint's filing. In allowing these amendments, the parties would need to re-engage in litigation, in a case that has already been

10

before this Court for seven years, and which would only serve to "significantly delay the resolution of the dispute." Wilson, 2020 WL 401814, at *3 (citing Long v. Wilson, 393 F.3d at 400).

Finally, regarding James's modifications to his requests for relief in the WHEREFORE clause, as noted previously, he may not seek additional forms of relief unless he prevails on his claims in Count III, which he has not done.

    4.    <u>Count IV: Fraudulent Transfer of Business Interests</u>

As noted earlier, James withdrew this Count at trial. He now reasserts this claim, makes minor modifications by clarifying one of the entities involved and inserting a date of August 5, 2022 [an inadvertent error], and seeks to add the following allegations [while James alleges that "Plaintiff" committed the following, the Court notes that this must again be an inadvertent error, as James is the Plaintiff in this case]:

    a.    Plaintiff never made a payment on the $810,000 Note used by her to purchase the initial interest in [the] Brooklyn Properties.

    b.    Plaintiff fraudulently, an[d] without authorization transferred a 41% interest in Etienne Estates from Francis Family Investments LLC in return for a reduction in the original $810,000. When Defendant transferred the 41% back to a company she owned she paid no consideration.

    c.    Plaintiff had no intention to pay for her interest in the Brooklyn Properties, and has engaged in ongoing fraud (i) in not providing financial documents nor distributions of cash pursuant to the operating agreements of the LLC's [sic] owning the Brooklyn Properties, and (ii) through her attempt to extinguish Plaintiff's interests in Etienne Washington['s] bankruptcy Case No. 14-40786 (NHL).

(Doc. No. 213 at 17-18.)

He also modifies his WHEREFORE clause to state that Johanna has embezzled funds and James has not received his share of profits. (Id. at 18.) Lastly, he modifies his WHEREFORE clause to request: (1) a "[f]inding that Plaintiff is the rightful owner of 51% of Etienne Washington and Etienne Greene"; (2) a "[f]inding that Defendant has fraudulently obtained title to [the]

11

Brooklyn Properties, and paid no consideration in the purchase"; (3) "[r]escission of property ownership (back to original transaction) through transfer of ownership of interest in the LLC to Plaintiff"; and (4) "[a] permanent injunction enjoining the Defendants [sic] from taking any action with respect to the business and legal affairs of the Company, and Defendant is prohibit[ed] to come within 100 yards of either property." (Id.)

These proposed amendments would result in substantial and undue prejudice to Johanna. James elected to withdraw Count IV before trial. Here, he reasserts the claim and expands upon it with three new supporting allegations. Furthermore, the third new allegation does not directly relate to the fraudulent transfer of business interests, but instead appears to present an entirely different type of claim. If the Court were to permit these amendments, Johanna would suffer substantial and undue prejudice, as she now would be forced to defend herself, after the conclusion of trial, against a claim she believed James no longer asserted and against new allegations not previously asserted.

Additionally, James's delay in making these proposed amendments to Count IV is truly undue and unexplained. James knew of the facts in support of this claim years before trial, not only by asserting them in Count IV in 2016, but also by addressing them during trial. They also stem from transactions occurring as early as 2002. (See, e.g., Doc. No. 147 at 76:5-12; 78:11-15, 21-22; 81:24-25; 82:1-2; 110:16-22; 128:14-18; Doc. No. 148 at 16:7-9; 25:6-15; Doc. No. 149 at 30:6-9; 80:23-25; 81:1-13.)

James does not explain why he elected to reassert this claim, nor does he explain why he failed to include the additional allegations in the original Complaint. In any event, asserting these claims now would not change the outcome of the trial and would not require conforming the Complaint to trial evidence. Lastly, as noted supra, the modifications to the WHEREFORE clause

would be futile, for a party must first succeed in his or her claims before relief may be granted, and he has not done so here.

     5.     <u>Count V: Waste and Mismanagement – Philadelphia Properties</u>

James modifies Count V by supplementing it with the following:

1. Defendant defaulted in the TD Bank Queen[']s Mews LLC loan, for among other reasons, failure to execute loan documents after years of avoiding the matter.

2. Defendant defaulted on TD Bank ONT LP loan for among other reasons failing to comply with loan terms to (i) provide [the] bank with financial documents, and (ii) maintaining cash reserves [and] has embezzled funds from Plaintiff's Capital Account.

3. Defendant commingl[ed] and fail[ed] to pay directly to Phoenix requisition funds (trust funds) for Queen[']s Mews LP and ARC Bank.

4. Defendant's [sic] embezzled funds from Plaintiff's ARC, ONT LP, and Queen[']s Mews LP requisitions.

5. WHEREFORE, Plaintiff understanding that the funds Defendant embezzled has [sic] not been recovered, and there are profits from years of operations that were never dispersed to Plaintiff, seeks: (a) [a] judgement [sic] for Capital Account funds missing of $900,604, and Loss [sic] Equity and Profits of $1,336,868.

(Doc. No. 213 at 22-23.)

Each of these proposed amendments would be futile, for each fails to state a claim upon which relief could be granted, given the facts presented during the non-jury trial. In sum, these proposed amendments would not change the outcome of the non-jury trial. First, James pled in the Complaint that Johanna caused the loss of the Queen's Mews properties by defaulting on the bank loans. (Doc. No. 2-2, Ex. A ¶¶ 49, 51.) While he now describes how this default occurred, the underlying claim of waste and mismanagement is the same as in the original Complaint. The parties presented the facts on this claim at trial and the Court has carefully considered those facts.

Next, James also asserts in the Complaint that Johanna caused Olde North Third to default on its loan. (<u>Id.</u> ¶¶ 45-46.) Again, the same analysis applies. While James provides greater detail,

the underlying allegation remains the same, and the Court heard the relevant facts at trial. The third and fourth new allegations also are futile. At trial, James asserted that Johanna "owed Phoenix Design Build Money. She was withholding funds from all of the projects." (Doc. No. 150 at 57:3-5.) He further testified that "[s]he had taken $125,000 from a trust fund account for T.D. Bank." (Id. at 61:24-25.) In his original Complaint, James alleged that Johanna misappropriated $125,000. (Doc. No. 2-2, Ex. A ¶ 48.)

Therefore, these "new allegations" simply repeat, with a slight variation, his initial misappropriation allegation. Again, the Court presided over a non-jury trial in which it heard testimony on these allegations. Thus, James's inclusion of additional facts would not alter the ultimate outcome of this case or suddenly convert the claim into one for which relief could be granted. Furthermore, while James introduces ARC [a separate property and real estate venture located in New York] in these allegations, he never alleged that ARC was one of the properties which led to the present legal dispute noted in the original Complaint and also does not do so in the proposed First Amended Complaint. To introduce ARC at this late stage would require Johanna to request discovery and unduly delay this case. The prejudice to Johanna is self-evident. Finally, the amendments to the WHEREFORE clause would also be futile, for James must first prevail on his underlying allegations, and he has not done so.

   6. <u>Count VI: Default on Payment of $810,000 Note Executed [in] 2002</u>

Count VI appears to contain a new claim proposed by James. James alleges: "[t]estimony and evidence prove Defendant executed this note, and has made no payment. The loan is still outstanding in its original amount." (Doc. No. 213 at 23.) James further states that this same issue is pending in the Supreme Court of the State of New York, Kings County. (Id.) In the WHEREFORE clause, James claims that Johanna embezzled funds and failed to pay him his share

of profits. (Id.) In this clause, he also requests: "(a) [a] judgement [sic] against Johanna judgement [sic] for $810,000 plus accrued interest[;] (b) [i]f Plaintiff is awarded a Rescission, Plaintiff shall forgo a judgement [sic] and collection of $810,000[; and] (c) costs of suit and such other relief as the Court deems just and proper, including interest and costs." (Id.)

      Here, the assertion of this new claim is the result of truly undue and unexplained delay, and also substantially and unduly prejudices Johanna. First, James notes that this alleged claim is pending before the Supreme Court of the State of New York. James filed the New York claim on behalf of FF Investments, LLC in 2012. (See Pl.'s Ex. 204.) The present case was filed four years later in May 2016. Second, the factual foundation of this claim arises from actions taken in 2002, fourteen years before the Complaint was filed, and which occurred simultaneously with many of the allegations made in the Complaint. Third, he directly references the note in his Complaint by stating that: "Defendant executed a Promissory Note in the amount of $810,000 in exchange for her interest." (Doc. No. 2-2, Ex. A ¶ 28.) Relatedly, James attached a copy of the note to his Complaint. (See id. at Ex. 2.) Fourth, James also referenced this alleged failure to pay the promissory note during trial. (See, e.g., Doc. No. 147 at 76:5-12; 78:11-16, 21-23; 81:24-25; 82:1-2; 90:21-25; 91:1-2; Doc. No. 148 at 20:7-10.) Therefore, James knew of these facts well in advance of filing his Complaint in 2016.

      James does not explain why this claim was not originally asserted. Accordingly, James's delay in asserting the allegations made in Count VI is truly undue and unexplained. Further, permitting James to amend his Complaint to include these allegations would substantially and unduly prejudice Johanna and also would result in a waste of judicial resources. The Court presided over a ten-day trial. To reopen the case and to require the parties to engage in further

discovery on this claim would prejudice Johanna by prolonging the efficient resolution of this dispute and also would place an undue burden on the Court.

       7.      <u>Count VII: JMLF et al vs. JM Francis</u>

Finally, James asserts a second new claim in Count VII. James states: "[t]estimony and evidence proof [sic] Defendant fraudulently, surreptitiously without authorization, took back the 41%." (Doc. No. 213 at 24.) Specifically, he alleges that this action violated the operating agreement between the parties because Johanna did not seek James's approval. (<u>Id</u>.) Further, James asserts that Johanna "committed fraudulent [sic] and had no intention to pay plaintiff." (<u>Id</u>.) This dispute is also pending in New York State Court. (<u>Id</u>.) That case was initiated by Johanna, in which she seeks a declaratory judgment, a permanent injunction, and a money judgment. (<u>See</u> Pl.'s Ex. 205.) In his WHEREFORE clause, James first claims that Johanna embezzled funds and failed to distribute profits to James. (Doc. No. 213 at 24.) Also in the WHEREFORE clause, James requests: (a) a "[f]inding that [he] is the rightful owner of 51% of Etienne Washington and Etienne Greene"; (b) a "[f]inding that Defendant has fraudulently obtained title to [the] Brooklyn Properties, and paid no consideration in the purchase"; (c) "[r]escission of property ownership (back to original transaction) through transfer of ownership of interest in the LLC to Plaintiff"; (d) "[a] permanent injunction enjoining the Defendants [sic] from taking any action with respect to the business and legal affairs of the Company, and Defendant is prohibit[ed] to come within 100 yards of either property"; and (e) "[c]osts of suit and such other relief as the Court deems just and proper, including interest and costs." (<u>Id.</u> at 24-25.)

Here, like Count VI, James's failure to add these new allegations earlier is truly undue delay and unexplained, and substantially and unduly prejudices Johanna. Furthermore, it would be futile.

James's failure to make these assertions earlier is unexplained and amounts to truly undue delay.  First, James notes that this dispute is currently pending before the Supreme Court of the State of New York.  Johanna filed the New York claim in 2013.  (See Pl.'s Ex. 204.)  Again, the present case was filed three years later in May 2016.  Second, this alleged transfer occurred in 2004, twelve years before the Complaint was filed.  Third, James's allegations in this new Count are almost identical to those in Count III, Waste and Mismanagement – New York Properties, which asserted: "Defendant surreptitiously and without authorization from Plaintiff caused his assignee, Francis Family Investments LLC, to assign a 41% interest in Etienne Estates LLC (NY) to an entity, Etienne Estates LLC (Delaware) . . . ." (Doc. No. 2-2, Ex. A ¶ 30.)  During trial, James testified that he was not aware of this transfer until 2010 (Doc. No. 147 at 110:16-22; 128:14-18; Doc. No. 149 at 30:6-9), but regardless of whether his knowledge was formed in 2004 or in 2010, it still pre-dates the filing of the Complaint by several years.  Fourth, James referenced this transfer repeatedly during trial and the Court considered the relevant facts.  (See, e.g., Doc. No. 147 at 112:10-18; Doc. No. 149 at 80:23-25; 81:1-13; 116:14-23; Doc. No. 150 at 94:25; 95:1-8; 128:2-4.)  As such, James knew of these facts prior to asserting them in the 2016 Complaint.  He again does not provide an explanation for why he failed to include this claim in his original Complaint.

Further, adding Count VII would result in substantial and undue prejudice to Johanna and also would result in a waste of judicial resources.  The Court presided over a ten-day trial.  To reopen the case and to require the parties to engage in further discovery would prejudice Johanna by extending this already drawn-out litigation and would also inhibit an efficient use of judicial resources.

Lastly, adding the new allegations would be futile, as they are almost identical to what are asserted in Count III of the 2016 Complaint.  These facts were heard during trial when James

presented his waste and mismanagement claim regarding the New York Properties. The Court has heard the evidence on this claim and has found against James on the merits.

IV. **CONCLUSION**

For the foregoing reasons, James's Motion to First Amendment of [the] Complaint to Conform to the Evidence (Doc. No. 213) will be denied.

## ORDER

And now, this 18th day of April 2023, upon consideration of James's Motion to First Amendment of [the] Complaint to Conform to the Evidence (Doc. No. 213) and in accordance with the above Opinion, the Motion to First Amendment of [the] Complaint to Conform to the Evidence (Doc. No. 213) will be denied.

BY THE COURT:


/s/ Joel H. Slomsky
JOEL H. SLOMSKY, J.